**WYCHE v. PERRIN.**
No. 14162.

Court of Civil Appeals of Texas. Dallas.
Jan. 27, 1950.

Rehearing Denied March 10, 1950.

Bonney, Paxton & Wade, Dallas, for appellant.

Storey, Sanders, Sherrill & Armstrong, and Hugh Steger, all of Dallas, for appellee.

BOND, Chief Justice.

This suit by appellee Sidney Perrin was filed March 14, 1947, against R. W. Daniel, Jr., Fred Smith, James H. Melton and appellant Charles D. Wyche, based upon an alleged verbal contract made by appellee with Smith for the construction of airport runways on land belonging to Mr. Wyche, and to enforce an alleged mechanic's or materialman's lien against the land belonging to Mr. Wyche. In the alternative, the suit was on "quantum meruit."

In the original petition plaintiff alleged, in brief, that on or about October 1, 1945, the defendants Wyche and Smith became associated in an airport venture, using Wyche's land as their place of business; and in 1945, in furtherance of that venture, constructed and caused to be constructed upon said property improvements and additions, including hangars and buildings necessary for their airport; and thereafter, to wit, on or about September 1, 1946, the defendants Daniel and Melton became associated with Wyche and Smith in partnership, under the name and doing business as "Daniel Airport,"—Daniel agreeing to furnish the necessary finances, Smith and Melton to furnish their services, and Wyche the land. And in fulfillment of the agreement by the partners and in reliance thereon, plaintiff entered into contract with Smith for the construction of runways on Wyche's land; and, in pursuance thereof, on or about November 15, 1946, commenced and continued such construction with full knowledge and solicitation of Smith and Melton and with actual knowledge by all of the defendants named in the suit, until on or about December 17, 1946, when Smith and Melton personally and in behalf of the partnership, repudiated the contract, thus causing plaintiff to cease his construction. In the alternative, the plaintiff alleged that on or about January 1, 1947, after the runways had been completed, the defendants Wyche and Smith entered into a new and further association for the conduct of the airport business, utilizing the runways previously constructed by plaintiff, and continue to use and enjoy same in furtherance of their airport venture, thus becoming liable to plaintiff for the reasonable value of said runways incident to the airport. In the prayer plaintiff sought judgment against all of the named defendants, jointly and severally, in the sum of $15,317.63, with interest and attorney's fees; and for establishment and foreclosure of his mechanic's lien against the property of defendant Wyche on which the runways were constructed, and for all further relief, either in law or equity, etc.

On November 5, 1948, plaintiff filed his first amended original petition amplifying in detail his cause of action, as in his orginal petition, against the partnership of Daniel, Smith, Melton and the defendant Wyche; again, on January 28, 1949, filed his second amended petition in which he further amplified his cause of action as against all of the defendants and, in addition thereto, alleged that the defendant Wyche was associated with Smith, individually, and as a partner of Daniel and Melton in the joint airport enterprise; that all things done in furtherance of the airport venture were authorized expressly, apparently, and impliedly, by the defendant Wyche; that Wyche and Smith were partners in the airport business, and Smith, as a partner with Daniel and Melton, was authorized to bind Wyche individually and was the agent of Wyche with authority to represent and bind Wyche, and on the occasion in question was acting within the scope or apparent scope of his authority, express or implied. In the prayer plaintiff sought the same relief as in his original and first amended petitions on contract, and alternatively on "quantum meruit" against Wyche and Smith.

To plaintiff's second amended petition (being his trial pleadings) each of the defendants filed separate answers—except the defendant Melton who did not answer—denying in extenso liability. In addition, defendant Wyche urged several special

exceptions to plaintiff's pleadings, all to the effect that same do not show a cause of action against him; answered by special and general denial and plea of the applicable two-year statute of limitation, in that, the cause of action as alleged in plaintiff's original and first amended petitions against him is one *in rem;* and, in his trial petition filed January 28, 1949 (more than two years after the alleged cause of action accrued), is one *in personam,*—a new and separate cause of action from that presented in plaintiff's prior petitions; also denied under oath the existence of agency and partnership, jointly or severally, with the other defendants. The trial court overruled all special exceptions and pleas of limitation.

The trial was to a jury and, over defendant Wyche's objection, submitted on special issues which the jury answered, material to this appeal, that: (1) Wyche and Smith were jointly associated in the operation of the airport on property of Wyche: (2) Smith was then acting as the partner of Wyche in negotiating and authorizing the work done by plaintiff on the runways; (3) Smith was also acting as agent, or apparent agent, of Wyche in negotiating and authorizing the work by plaintiff on the runways; (4) Smith, Melton, and Daniel were partners in the airport enterprise at the time the runways were completed; (5) Smith was also acting as a partner of Melton and Daniel and negotiating and authorizing the work to be done on the runways; (6) Smith, Melton, Wyche, and Daniel were not partners in the airport business at the time the work was being done on the runways; (7) Smith was not acting as a partner of Melton, Wyche, and Daniel in negotiating and authorizing the work on the runways; (8) defendant Wyche acquiesced in the work done by plaintiff on the runways; (9) Wyche, after the work was done, used the runways in connection with the airport; (10) the work by plaintiff on the runways was done in a workmanlike manner and is of the reasonable value of $15,317.63; and (11) the land belonging to the defendant Wyche, comprising the airport, was improved by the work done by plaintiff in constructing the runways to the value of $15,317.63.

As a result of the jury verdict, the court, over defendant Wyche's timely objection and subsequent motion for judgment non obstante veredicto, entered judgment in favor of the plaintiff against the defendants Charles D. Wyche and Fred Smith, jointly and severally, for the sum of $17,357.41 and 6% interest per annum from March 24, 1949 (date of judgment) until paid; denied plaintiff a mechanic's lien and foreclosure thereof against Wyche's property and effectively removed and cancelled all clouds on title by virtue of this suit; and decreed that plaintiff take nothing against the defendants James H. Melton and R. W. Daniel, Jr. The defendant Wyche, alone, appealed.

The points of error upon which this appeal is predicated are, in effect: (1) conflict in the findings of the jury, in that, Smith was acting as a "partner of Wyche" and that Smith was acting as "the agent or apparent agent for Wyche" in negotiating and authorizing the work by plaintiff on the runways; (2) that there was no evidence, or at least insufficient evidence to support such findings; (3) that the findings to special issue No. 3, that Smith was acting as "the agent or apparent agent" of Wyche are duplicitous of material facts couched in a single issue; (4) that there is no evidence, or at least insufficient evidence, to support the findings to special issue No. 8 to the effect that defendant Wyche "acquiesced" in the work done by the plaintiff on the runways, and that the trial court's failure to define the term "acquiesced" in reference to the issue No. 8 was error; (5) that the court erred in excluding photographs of the runways constructed by plaintiff tending to show the kind and character of the work done and the benefits to Wyche's land under plaintiff's plea of quantum meruit.

We will approach appellant's points of error in the order stated, where essential to the disposition on this appeal; points not mentioned are overruled. Special issues Nos. 2 and 3 present two fact issues raised by the pleadings of plaintiff; that

is, Wyche and Smith were partners, and Smith was the agent or apparent agent for Wyche in the negotiation and authorization of the work on the runways. The jury answered both issues in the affirmative. Ignoring, for the time being, that there is no evidence to support the affirmative answer to either issue, and assuming that there is evidence to support the jury finding on one or both issues, or on one and not the other, manifestly, the defendant Wyche would be liable in the capacity of either of the affirmative answers, even though in conflict or inconsistent. The issues submitted were alternative issues upon which plaintiff predicated Wyche's liability, either upon actual partnership, or individually brought about by his agent. "It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury * * necessarily requires the entry of a judgment different from that which the court has entered. The petitioner cannot meet this test because the jury has not made a finding in its favor on proximate causation." Little Rock Furniture Mfg. Co. v. Dunn, Tex.Sup., 222 S.W.2d 985, 991.

In the case of Hoerster v. Wilke, Tex.Civ.App., 140 S.W.2d 952, 955, affirmed by the Supreme Court, 138 Tex. 263, 158 S.W.2d 288, the jury found, first, the existence of actual partnership; second, the existence of a partnership by holding out; and, third, personal agreement acknowledging liability. In disposing of the question the court said: "These were alternative grounds upon which his liability was predicated. And the finding, where supported by competent evidence, either of actual partnership, or partnership by estoppel, would merely render immaterial the finding of an agreement to be personally liable." So, in the case here, if, in fact, the findings are both supported by pleadings and evidence that Wyche, in the negotiation and authorization incident to the construction of the runways, participated either as a partner with Smith or through Smith as his agent, his liability would be established in either event by the affirmative findings, —especially where there was no finding by the jury which would be the basis, under any circumstance, for judgment to be entered in favor of the defendant. Aside from that, if the findings of the jury are in conflict (and we believe they are), and each is supported by pleadings and evidence, it became the duty of the trial court to construe the verdict and apply the most reasonable application which the court deemed proper as to the relationship of Smith and Wyche with the transaction, irrespective of Smith's relationship with Melton and Daniel, or whether or not Smith was acting "as agent or apparent agent" for Wyche, or was a partner with Melton, Wyche, and Daniel in the airport business. We overrule appellant's first point of error.

This leads to a consideration of appellant's contention that there is no evidence, or at least insufficient evidence to support either conflicting issue—that Smith was a partner, or that Smith was acting as the agent or apparent agent of Wyche. The work and labor in question on the runways were performed on Wyche's land by the plaintiff during the fall of 1946. The contract for the work was negotiated by Smith in the summer of 1946, and that, too, at a time when he and Wyche were admittedly operating the airport. The uncontroverted evidence is that Perrin dealt directly with Smith. Plaintiff Perrin was permitted to testify (over defendant Wyche's objection) that Smith told him that he and Wyche had been partners in the airport venture from its inception in 1945; and on cross-examination Perrin further testified that Smith told him that Wyche was an active interested party in the airport from its inception; and he might have told him that Melton and Daniel were also interested in improving the airport. Perrin further testified that Wyche came out on the airport ground at the time of the negotiation with Smith, had a talk with Smith, and immediately thereafter Smith came to him (Perrin) and said "Go ahead with the work," that Mr. Wyche had said if Daniel didn't pay for it, he (Wyche) would do so. On further cross-examination Mr. Perrin testified that he had no talk with Mr. Wyche personally

about the job; that Smith entered into all active negotiations with him, but that Wyche was on the ground almost daily, making no complaint or objection about the work being done.

The testimony of Mr. Perrin, in the main, was corroborative of that of Mr. Smith. Smith had previously testified that he and Wyche were the only ones interested in the airport venture from its inception in 1945; that Wyche had nothing to do with the actual running of the airport, only furnished the land and put up all the money, and he (Smith) was to devote all his time to the business and the profits "split 50-50"; that this arrangement, without change, continued until the latter part of 1947, and during all the negotiations and construction of the runways he secured Mr. Wyche's approval and told Mr. Perrin that Wyche said it was a good deal if he (Perrin) would do that work, and that he would pay him if Mr. Daniel failed to go through with a contract then in contemplation for the lease of the airport.

There is much force in appellant's contention that there did not exist an agreed partnership contract between Wyche and Smith and that there did not exist a four-way partnership among all of the other defendants. Furthermore, we are of the opinion that plaintiff's pleadings and the findings of the jury are too confusing, contradictory, and conflicting, to satisfactorily establish by preponderance of evidence liability of the defendant Wyche by contract, either as a partner or through the agency of Smith. We therefore sustain appellant's second point of error.

We now turn to whether or not defendant Wyche is liable on "quantum meruit," in that, Wyche received a benefit and, in conjunction with his associates, made use of and enjoyed the runways on his land in furtherance of his airport. The testimony is uncontroverted that at the time of the negotiation and during the construction of the runways, Wyche was in need of such improvements; that his airport runways were insufficient for airplane flights to and from his airport. Aside from that, Wyche, having been at the airport almost daily, observing the work being done by plaintiff, and, when completed, having used and enjoyed the runways in furtherance of his airport business without objection or protest, evidently acquiesced in the work; that is, his silence and omitting to object tantamount to consent and agreement to pay for the reasonable value of the improvements.

Liability on "quantum meruit" is liability on an implied contract, or contract implied in law, as distinct from liability on implied contract proper, or contract implied in fact. "An essential prerequisite to any such liability is the acceptance of benefits by the one sought to be charged, rendered under such circumstances as reasonably to notify him that the one performing such services was expecting to be paid compensation therefor." Dallas Joint Stock Land Bank v. Colbert, Tex.Civ.App., 127 S.W.2d 1004, 1008. The amount recoverable depends on the extent of the benefits conferred, or for work performed. The evidence being uncontroverted on "quantum meruit," it would be manifestly unjust and inequitable to permit Wyche (the only one connected with the airport who was financially able to pay for the work) to sit silent and permit such work to be done and thereafter use and enjoy the airport improvement, and subsequently interpose the defense that he should not be required to pay for such benefits because a contract was not made in a particular manner. In determining the issue, the trial court decreed Wyche's liability; and accordingly entered judgment for the amount the jury found the runways were reasonably worth to the airport. We are also of the opinion that Wyche and Smith became liable to the plaintiff to the extent of the reasonable value of the runways to the airport. The particular manner of their liability is immaterial.

The appellant Wyche having been aware of appellee's claim against him under all the circumstances as alleged in appellee's original petition filed at a time not subject to a plea of limitation, plaintiff's second amended petition, filed January 28, 1949, which merely amplified his claim against appellant personally and against his property, in our opinion, was

not based upon and growing out of a new, distinct, or different transaction and occurrence, or the change of any fact or ground of liability as to be subject to appellant's plea of limitation. True, appellee could not recover on contract and, in the same suit, on "quantum meruit," except in alternative pleadings; nor can he recover *in personam* in a suit only *in rem*. A complete answer, we think to appellant's contention is that no new or different transaction was described in either of appellee's amended petitions. Article 5539b, Vernon's Ann.Civ.St., as enacted in 1931, provides: "Whenever any pleading is filed by any party to a suit embracing any cause of action, * * * and at the time of filing such pleading such cause of action, * * is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. * * *." The test of the statute is whether or not the cause of action alleged in the amended pleadings is "wholly based upon and grows out of a new, distinct or different transaction and occurrence." Texas Pacific Coal & Oil Co. v. Smith, Tex.Civ. App., 130 S.W.2d 425, 428. We overrule appellant's point of error to the action of the court in overruling his plea of limitation.

In our view, as expressed above, the judgment of the court on findings of the jury being, at least, based on "quantum meruit" for the reasonable value of the improvement placed on the airport with knowledge and tacit consent of the defendant Wyche, it should be sustained; but the judgment should not bear interest until the value of the improvements was established by trial. Hence the $2,039.79, amount of interest from January 1, 1947 to date of judgment, included in such judgment, should not have been allowed. Legal interest should only be allowed from date of judgment until paid. Accordingly, the judgment of the trial court should be reformed to the value of the runways as found by the jury, that is, $15,317.63, with 6% interest from date of judgment (March 24, 1949) until paid; otherwise in all respects the judgment should be affirmed. It is so ordered.

Reformed and, as reformed, affirmed. Costs on appeal taxed against appellant.